### HANGER & MOODY v. THE STATE.

REAL ESTATE BANK—*Stock mortgage, nature of, etc.*—The stock mortgages executed to the Real Estate Bank, were made for the double purpose of securing the payment of the State bonds, and money borrowed of the bank by the stockholders.

MORTGAGES—*Where equity of redemption of sold, etc.*—Where the equity of redemption in mortgaged premises is sold under a judgment, or under a junior mortgage, which judgment or mortgage is a lien upon the equity of redemption merely, the legal presumption is, that the purchaser only bids to the value of such equity of redemption, and that the land purchased is, in equity, the primary fund to pay the amount due upon the prior bond and mortgage.

APPEAL FROM PULASKI CHANCERY COURT.

Hon. T. D. W. YONLEY, *Chancellor.*

*Clark & Williams,* for Appellants.

By the general nature and purposes of the bank, without any reference to its positive provisions, it seems to us plain that the bank could not, either by a foreclosure in a Court of Chancery, or under the power of seizure and sale contained in the charter, become the owner of these lands in her corporate right, so that they would belong to the general funds. But if we turn to the provisions of the charter, we shall find that such a proceeding is expressly, or rather by direct implication, prohibited; See 21*st section;* and as for the construction of this section, which is incorporated in most of the bank charters, as well as charters for insurance companies in the United States. See *Bank of Michigan vs. Niles,* 1 *Doug. Mich.,* 401. And see *Russell vs. Tapping,* 5 *McLean,* 194; *People vs. Utica Insurance Company,* 15 *Johns.,* 358; *Utica Insurance Company vs. Scott,* 3 *Cow.,* 709; *Farmers' Loan Company vs. Clauces,* 3 *Comst.* 470; *The Banks vs. Poitiaux,* 3 *Rand., Va.,* 136; *Tuamaston Bank vs. Simpson,* 21 *Me.,* 195; *Logan vs. Bodalett,* 1 *Blackf., Ind.,* 418–419; *Angell and Ames on Corporations,* 153, 154, 155; *Merrett vs. Lambert,* 1 *Hoff., C. R.* 166.

In our view of the case, the purchase of these lands, in such manner as to convert them into banking funds, was an act which could not possibly come within this proviso; because it was, in no sense, done as a "requisite for accommodation in relation to the convenient transaction of the business of the bank;" and if it was, it was not land which had been mortgaged to the bank in satisfaction of a debt previously contracted in the course of its dealings, both of which must concur to give the right to purchase. See the case above cited, and *Edwards vs. Farmers' Insurance Company*, 21 *Wend.*, 467.

*M. W. Benjamin*, Solicitor General, for the State.

Thorn mortgaged to the Real Estate Bank certain lands. These mortgages were double mortgages, the senior to the State and bondholders and the junior to the bank. See *Wilson vs. Biscoe, et al.*, 11 *Ark.*, 44. Thorn failed to pay and the bank foreclosed and bought in the property. The receiver sold the right of the bank (the equity of redemption) to Moody & Hanger.

Peay, in his capacity of receiver, was not and did not claim to be the State of Arkansas, and if he had been, there would have been no merger of the two titles in one, unless he had intended to make it. It is a well settled rule, that where two estates meet, in equity, there is no merger unless it is the intention of the party in whom they meet, to have them merge. See *Forbers & Moffett*, 18 *Vesey*, 384; *James vs. Morey*, 2 *Cowen*, 246; *Davis vs. Peirce*, 10 *Min.* 378; *Earle vs. Washburn & Allen*, 95; *Bell vs. Woodward*, 34, *N. H.*, 90; *Knowles vs. Lawlin*, 18 *Geo.*, 476; *Moore vs. Harrisburg Bank*, 8 *Watts*, 138; *Haynes vs. Pope*, 14 *La. An.*, 248; *Hawkins vs. McVae*, 14 *La. An.*, 334.

BENNETT, J.—The bill, in this case, is brought to foreclose a mortgage given by Thomas Thorn to secure the payment of a stock bond executed by Thorn to the Real Estate Bank of the State of Arkansas, and to subject certain lands,

therein described, to the payment of a debt, which, as is alleged, was secured by said mortgage.

By the bill, it appears that one David Fulton, subscribed for one hundred shares of the capital stock of the Real Estate Bank. That, on the 16th day of September, 1837, the proper officers of the bank awarded to said Fulton seventy-two shares of said capital stock, whereby he became a stockholder in the bank to that number of shares; that, on the 16th day of May, 1840, on his application, and the written request of Thomas Thorn, his stock was transferred to said Thorn, who furnished and executed the mortgage exhibited in the bill. This deed of mortgage recites that, on the 16th day of May, 1840, Thomas Thorn executed his bond, to be due on the 26th day of October, 1861, and payable to the bank for the sum of seven thousand and two hundred dollars, with interest at the rate of five per cent., payable half yearly. The bond was executed for stock subscribed as aforesaid. The mortgage was conditioned, that if the said Thorn or his assigns should pay all such sums of money as he might receive from the bank, on account of stock and the interest thereon, and should pay to whom it might be due, so much or such sum of bonds of the State, issued in favor of said bank and the interest thereon, or so much as would be equal to the stock allowed; and, also, should pay the bond in said deed recited, and the interest thereon, then the deed to be void. That, by virtue of being a stockholder in the bank, Thorn obtained stock loans; that the said Thorn has not paid or caused to be paid his proportion of the bonds of the State issued to the State; nor has he paid the bond above described, nor the interest on the same.

Peter Hanger and Francis Moody make themselves defendants under the provisions of the statute. They answer, admitting the facts of the bill, but allege that, after the execution of the mortgage above recited and sought to be foreclosed, Thorn borrowed of the Real Estate Bank, upon security of said mortgage, the sum of $3600, and that the bank brought a bill in the Pulaski Circuit Court to foreclose

said mortgage to pay them for this loan of $3600 and interest, which had never been paid by Thorn. On this bill a decree was finally rendered in favor of the bank against Thorn, and the lands mentioned in the mortgage ordered to be sold. A commissioner was appointed to carry the decree into effect. The money was not paid as ordered by the court. The land was sold under the decree, and bought by Luther Chase, one of the trustees of the Real Estate Bank, for the sum of $120. The commissioner made a deed to him for the benefit of the bank.

Gordon N. Peay, by a decree of the Chancery Court of Pulaski county, was afterwards appointed receiver of the effects and assets of the bank, and, while acting under orders from the court, on the 1st day of January, 1858, by deed, conveyed what right, title and interest the bank had in these lands to Hanger & Moody for $11,163, to be paid in the bonds of the State of Arkansas issued to the Real Estate Bank, which were paid and sale confirmed by the court.

This new matter is made a cross bill, and the defendants pray that the said mortgage may be declared fully discharged and satisfied; or that the sum of $11,163, so paid by these defendants, may be declared to be a fund devoted in equity to the payment of the sums due by said Thorn under the mortgage, and that an account may be taken as to what is due by said Thorn under the mortgage, and they (Hanger & Moody) be permitted to pay any balance which may be found due, after deducting that sum, in redemption of said lands.

The State, by her answer to this cross bill, admits the matter stated by the defendants to be true in point of fact, but insists that the defendants are not entitled to the relief as prayed. Upon the hearing, the cross bill was dismissed, and a decree rendered in favor of the State; from which decree an appeal was granted.

Only two points are raised by the new matter set up in the answer of the defendants:

*First.* Was the sale of the lands, and purchase of the same

under the decree of the Pulaski Circuit Court, a complete discharge of the mortgage which the State is seeking to foreclose?

*Second.* If not a complete discharge, are the defendants entitled in equity to have the amount paid by them, with the interest, while in the hands of the receiver of the bank, created into a fund out of which the stock mortgage shall be paid, and the mortgage discharged to the extent of that fund?

The mortgage, which the State is seeking to foreclose, was executed under the provisions of the thirteenth section of the charter of the bank. In that section it was required that the stockholders should execute bonds and mortgages to the bank, conditioned for the payment of the bonds of the State and interest thereon, and, also, for the payment of all moneys received from the bank on account of subscriptions for stock.

When a person has executed a mortgage, under the provisions of this section of the charter, his deed of mortgage secures the State for the State bonds loaned to the bank to the extent of his interest in it, and also secures the bank for the money he, as a stockholder, or otherwise, has borrowed of the bank.

We do not, however, deem it necessary to say more upon the nature of these mortgages, as the case of *Wilson vs. Biscoe, et al.*, 11 *Ark.*, 44, has fully and completely exhausted the reason and authority for holding these mortgages to be double in their character.

Justice Walker, in delivering the opinion in the above case, said, "that the two conditions in the mortgage are separate and distinct, and secure rights to the State and the holder of State bonds, prior in point of time and equity, and a subsequent equity and security to the banks for loans made to the stockholder, on account of stock, to the same extent and as fully as if two distinct instruments, the one prior to the other in point of time, had been executed for that purpose."

In the case before us, it appears that Thomas Thorn mortgaged to the Real Estate Bank certain lands under the pro-

visions of their charter. Thorn failed to pay his note or stock bonds; the bank foreclosed and bought the property itself. Several years afterwards the receiver sold the right of the bank to Hanger & Moody, and in the deed of the receiver it was expressly covenanted that he in no way sold or in any manner interfered with the interest of the State.

The foreclosure and sale was for only the subsequent equity and security which the bank held for loans made by it. The purchaser could only buy what was foreclosed and offered for sale, and, in this instance, stood in the relation of junior mortgagees, after the purchase from the bank receiver, and subject to the prior mortgage lien of the bondholders and the State. The purchaser acquired no other estate in the lands than the equity of redemption of the mortgagor, and a subsequent purchaser could not get any other or greater estate.

The sale, under the decree of the Pulaski Circuit Court, was not a complete discharge of the mortgage; then, are these defendants entitled, in equity, to have the money paid by them, with the interest, while in the hands of the bank receiver, created into a fund out of which the stock bond, given by Thorn to the bank, shall be first paid, and the surplus, if any, applied to the discharge of the mortgage? Or, in other words, was the relationship between the bank and these mortgagors a *fiduciary* one? the bank being a trustee, and having no power or control over the mortgages, except in a *fiduciary* capacity. And should it become necessary for the purposes of the trust, that a sale of the property should take place, could the bank become the purchaser of it, in its own right? as trustees cannot buy trust property, except for the interest of the beneficiaries.

We have already said that this mortgage was double in its character, having the same effect as though Thorn had executed two instruments—one to the State, to secure it for such a *pro rata* of the bonds issued to the bank as he (Thorn) held shares of its capital stock; the other, given to secure the bank for Thorn's stock-bond, made in payment for his stock

in the bank—the mortgage given to the State being prior to the one given to the bank. If this be true, there can be no trustee relationship between any of the parties. It is an occurrence which happens in nearly every day's business transactions, that A, to secure a debt which he owes B, executes to him a mortgage on his lands, and afterwards he executes another one to C. C, at the proper time, forecloses his mortgage, and, at the sale under the decree, buys the property himself. After the sale and confirmation, what has C obtained by his purchase? Simply the equity of redemption which A had, and the property subject to the prior incumbrance of B. Now, suppose that C sold what he bought for ten or twenty times as much as he paid for it, could it be said he was a trustee for A, and that the surplus over and above what he paid for the equity of redemption, should be applied to the extinguishment of the mortgage to B?

It has been repeatedly held that when the equity of redemption in mortgaged premises is sold under a judgment or under a junior mortgage, which judgment or mortgage is a lien upon the equity of redemption merely, the legal presumption is that the purchaser only bids to the value of such equity of redemption, and that the land purchased is, in equity, the primary fund to pay the amount due upon the prior bond and mortgage. *Tice vs. Armin*, 2 *Johns. Ch. R.*, 125; *Hyer vs. Pruyn*, 7 *Paige R.*, 465; *McKinstry, adm'r. vs. Curtis*, 10 *Id.*, 503.

Thus the lands are primarily liable to secure the prior incumbrance. The foreclosure of the mortgage, and the purchase of the lands by Chase, under the decree, extinguished all the right and title of Thorn to the land, satisfied the debt due the bank to the amount bidden, and discharged the lands from the lien of the mortgage in favor of the bank. The debt due the bank, before the foreclosure of the mortgage, was assets of the bank. After the purchase of the lands by Chase, they became assets to the extent of Thorn's interest therein; and after Hanger & Moody bought the lands of the

43

receiver, the amount paid by them, whether more or less, were assets of the bank to be applied to the extinguishment of its liabilities, and not for the benefit of Thorn.

If, at the sale under the decree, the lands had brought more than the amount of the junior debt, the residue would belong to the mortgagor, and not to be applied to the satisfaction of the mortgage first given; for the lands in the hands of the purchaser of the equity of redemption are primarily liable for this purpose. The equity of redemption is the property of the mortgagor, and the presumption of law is, that the purchaser of it only bids for its value—bids such sums as he deems the lands are worth in excess of the prior mortgage debt.

If Thorn had paid up all his indebtedness to the bank which was secured by this junior security, there would have been no doubt but that he would have been entitled to have had his lands released to that extent. But he having suffered his equity of redemption to be sold from under him, by virtue of a decree of a court of competent jurisdiction, that sale extinguished all his title to them, and it was vested in the purchaser, and a subsequent sale by the receiver of the bank, although for a much larger sum than was originally due the bank, cannot inure to Thorn's benefit, and certainly not to these defendants.

Under no view of the case can we see where the trustee of the bank, or the receiver of it, were the agents or trustees of the defendants, and it is not necessary to inquire into the fact as to whether the lands brought more than enough at the sale made by the receiver to Hanger & Moody to pay Thorn's indebtedness or not.

In reviewing the whole case, we are of the opinion the chancellor committed no error in dismissing the cross-bill of the defendants, and rendering a decree in favor of the State.

Decree affirmed.